Good morning, we are ready to hear arguments in our first case, United Utah Physicians v. Diesel Power, 20-40-43. We're ready to hear from the appellant. Good morning, your honors. May it please the court, Cole Cannon on behalf of the appellant, all of the appellants except for Keaton Hoskins who has resolved this case by settlement. It's a privilege to be here on this most important argument of my career, notwithstanding the fact we're here by electronic means. The significance of the moment is not lost on me. We're here to talk about some very important things. This issue is bigger than the Clean Air Act, the Clean Water Act, congressional intent, and in fact, goes to the very heart of the Constitution of the United States of America, specifically Article 3 in standing. Specifically, the Lujan case and the standards that are indispensable, immutable, and irreducible. We think that this case is affirmed, and those cases will in fact be disposed of, and that is not something that was intended by Congress. It's not something that's appropriate under constitutional jurisprudence. As the very wise Judge Shelby, who I find to be the most well read trial judge and most intimidating one for that matter, well said that this case could benefit from some appellate review. And the reason for that is if this court upholds the lower court ruling and these doctors are able to bring private citizens action for these types of claims, then quite literally, everybody can sue anybody for any reason whatsoever. And even worse, they can seek attorney's fees. So what we're talking about today would be a very massive expansion of the Clean Air Act, and that's not what would be appropriate. And the reason the plaintiff cannot cite to one circuit court case that supports the proposition that a mobile source pollutant, such as in the case here, is because it hasn't existed. The Clean Air Act is no spring chicken. It's been around for 58 years, and there's not one case that at least I can find, or that was cited in the brief, that gives rise to a private right of action over a mobile source pollutant. Do you have any cases that can help us that are brought, as this one is, as a citizen's complaint under the Clean Air Act? I think that there is some very good analogous case. One we cited is the Washington v. Ballin case. In that case, a group of concerned citizens sued the Washington Department of Ecology. The basis of their claim was that the department, the Washington department, wrongly renewed a permit for five oil refineries. These are oil refineries that had been around for 20 years. Those are what we call point source polluters. They're fixtures. They don't move in contrast to a mobile source, which would be like a truck that can go interstate and those sorts of things. The court said, in dismissing the plaintiff's cause of action, said that you do not, even though we're talking about five oil factories, much bigger than the harm at hand in my case, you do not have the redressability and the causality sufficient to meet Article 3 standing. That was the right result. The right result is that pollutants should have to make a meaningful contribution, which again, is the whole jurisprudence of all the Clean Air Act history related to point source. Think factories, think big emitters, think haze clouds that are in people's lives. If you put that requirement on it, can you ever have a citizen suit? I mean, that was one of the points that the district court made in this case. It's a very astute point, Your Honor, and to address that, Article 3 is a threshold analysis that every litigant under the Constitution is required to walk through. We're not trying to gut the citizen supervision under 7604 of the Clean Air Act. Citizen suits are a very important and well-respected part of our law. They're a very important part of our process of cleaning up the environment, and they've worked very well for countless years of point source and area source pollutants. They have not yet historically ever been used for global sources, and the reason for that is because federal agencies and state agencies are much better suited to enforce these sorts of things. No different than the federal government's ability to regulate interstate commerce, interstate banking, railways, trucks, unlike power plants, can move over state boundaries. Defeat parts that are shipped, like in this case, the 164 parts that were shipped inadvertently to other states, was done through interstate commerce. The federal government, the EPA, the state regulatory agencies, even police officers, have the right to ticket people when they are driving polluting cars or their cars are too loud, but if we allow the scientifically insignificant or untraceable standard to be met by the claims here, then again, everybody can sue everybody, and it creates a situation. An answer to the rhetorical question that Judge Shelby also asked, he said, well, if I rule for UPHE, then can anyone with asthma in the Wasatch Front just sue anyone who drives a truck, or your neighbor, and bring them into federal court? I think the answer to that rhetorical question is a resounding yes. If this court ruling is affirmed, we will be expanding and creating a whole new area of Clean Air Act jurisprudence that allows neighbors to sue neighbors, and even worse, allows neighbors to sue non-neighbors. You might note in the file that my client was held liable for penalties for conduct that was outside the state of Utah, for parts that were shipped all the way to Florida, 2,000 miles away. It is undisputed we're talking about the Utah Physicians for a Healthy Environment, not the Floridian, not the South Carolinian, but my client nonetheless was held liable for penalties for conduct that happened out of state, and that runs afoul all the geographical limitations outlined in the case law, both Chevron Chemical, Crown Scent case, the Bellin case. Everybody has to still prove with concrete and particularized harm what they have done. To give a little bit of context here, I think it's important. My clients are famous, true. They have a show on Discovery Channel, which makes it look like they pump out lots of trucks. Over a five-year period, we're talking about 31 trucks total, of which all of the ones that were given away in sweepstakes were given away out of state, not disputed, and only three of the trucks were given away or sold in Utah. Three trucks and nine parts is what we're talking about. Three trucks, nine parts stayed in the trucks and 88 part numbers. We're not talking about a VW case. We're not talking about a big factory that pumps these things out on a daily. This is a very small number. In fact, these trucks, I wish I could show the court some pictures. These are very beautiful, big trucks that are better suited for monster truck shows and SEMA presentations, and they're not the type of truck you would see driving down the street a whole lot, and that's why it's undisputed. Our trucks over a period of five years only drove 4,200 miles. On a very busy month, I can personally drive 4,200 miles. Absolutely. Let me drill down on something with you because the mobile source issue is interesting to me. What if you had some of your trucks were at a racetrack and my house was right next to it, and these trucks were over there spewing out some diesel exhaust, and that exhaust was coming over and aggravating the medical condition I have. Do you think that I would have a concrete enough injury in that being the next door neighbor to have a cause of action against you? Yes, Judge Carson, I think you do. I think that's a very good point. This is run-of-the-mill tort law. What we're talking about is not expanding Section 7604 of the Clean Air Act, but if in your hypothetical, the noise was too loud, the decibel levels, the soot from the vehicles was staining and stucco on your house, or it caused an actual traceable scientific, not scientifically indiscernible, but an actual harm to your lungs, for example, and you had medical experts to prove that, tort law is your remedy, and you can hail people in, and they do all the time. Any different than if my neighbor came and dumped toxic waste on my property, I would certainly have a cause of action. But we don't have to have probable cause in this case, do we? No, I don't think probable cause is... Approximate cause, yeah. Well, no, approximate cause, I believe, is required. Under Lujan, one of the criteria is there has to be a causal connection that's not interrupted by conduct of third parties, and we can talk briefly about third parties just to give further context. At most, we're talking about 0.0 tons of NOx gas over a period of five years. That's 40 pounds of emissions over five years. On a good day, if I eat my Wheaties, I can curl that much with one arm. So we're talking about an average of eight pounds per year in a state that has 84,000 square miles of area, that has 3 million population base, 3 million registered vehicles, five coal-burning plants, numerous oil refineries in the Wasatch Front. There is lots of contributing sources. What's the threshold you would set? 500 pounds? At what point is there standing in your view? Yeah, I think to be a meaningful contribution, it might have to rise to a level at least over, say, 5% might be a reasonable standard. Something that a scientist, and I'm certainly not the scientist, would be able to rationally tie or rationally, fairly trace into the Lujan Standard, the conduct to the alleged harm. My speculation would be maybe that's 5% or greater. What we're talking about here, though, 40 pounds over a course of five years, we're talking about less than, I think the math is one billionth of the contributed air quality problems were caused by my client. I think this is important because let's expand this view to not just the Clean Air Act. If any litigant has any federal claims that they want to come in, they can always say, oh, remember that Diesel Brother case? There was only a one-billionth of a chance that their emissions actually caused physical harm or made its way into the lungs of the plaintiffs in that case, but that was enough for standing. So we would be basically removing the whole standing barrier and allowing litigants to come into this case. The plaintiff in this case... The only cases you have supporting that are greenhouse gas cases, is that right? Yes, I believe this case is better analogized to greenhouse gas cases. You don't have any other cases that support this minimum threshold, do you? No, I don't. But the plaintiff... Well, let me ask you about the greenhouse gases because there, everybody in the world suffers the same effect. And the Supreme Court has made it, I think, reasonably clear that if you can't distinguish yourself from everybody else in the world, then you don't have standing. But here, the plaintiffs can distinguish themselves from others in the world because they're in the Wattash Front area where the pollution exists. It's hard for me to see any precedent for the limitation you suggest for standing in that circumstance. Yeah, it's a fair point. The atmosphere is a really big thing. By the same logic, we could say that somebody in Florida breathes the same atmospheric air in a quite literal sense. If I have any emissions come out of my tailpipe, then it ends up in the universe of air that all of us breathe. And so therefore, neighbors can sue neighbors for check engine lights. I can sue my neighbor down the street for missing catalytic converter. And remember, the Clean Air Act is not just a knowing violations. It's almost a strict liability statute as far as owning and operating these vehicles. And so the question is... There is a no or should have known in part of it. And in other parts, it's just basically if you own and operate it, which opens up a very interesting issue. Many of these trucks, in fact, our actual fact pattern, 17 of the trucks were purchased from an auction, already had delete parts on. At auctions, you don't get oftentimes the opportunity to inspect the vehicle. You buy them, you sell them. Same goes for used car dealerships. They take a car and trade, they might spruce it up with a new paint job or something and they resell it. We didn't tamper with 17 of these trucks in question. We just resold them innocently and that's what happened. Yet we were held liable regardless of the fact they were sold out of state and not in the jurisdictional grounds. So Judge Hartz, you raised an interesting point. Is there some theoretical harm that's put into the atmosphere? Sure. But the standards of Lujan do not allow for that type of theoretical or abstract thing. The plaintiff has the burden to establish standing for every single cause of action. And meaningful contribution is a much better standard than mere contribution because otherwise, because of the attorney's fees provision, you're going to have a deluge of new litigation. It's worth noting in this case itself, the plaintiff's counsel wrapped up $246,000 of attorney's fees prior to the complaint being filed, which pales in comparison to the actual attorney's fees that were incurred by the end of trial. I don't say that to cast any aspersions. I say that there's going to be a high incentive for attorneys to go pursue these types of cases against anybody when the state is much better positioned to do this. And that's why in the Massachusetts v. EPA case, the court made a point to say that state actors are unique and separate from private parties. State actors such as the EPA have a certain solicitude under the police powers to protect the health, well-being, and welfare of their people. It is a much lower threshold, again, the rational basis standard we all know and love, that's different and unique from the Lujan standard for private parties. Private parties must enter through the gates of Article III where state actors get to enter through the gates of Article I of the Constitution under the police and powers. This type of conduct is better regulated. Use car dealerships, use car auctions, mobile source pollutants that move state to state, parts being sold through internet distribution is better suited. Let me ask you a question about attorney fees. Attorney fees haven't been assessed yet, have they? They were assessed and we filed an opposition to they were reduced by about $500,000. If a judge thinks that a lot of legal expenses are being incurred to deal with a minimal problem, the judge can reduce attorney fees. Judges have discretion to handle that, don't they? They do, but I think that we're creating a whole new area of law, a whole new area of plaintiff's counsel that's going to be very excited to be suing people over. Maybe I got passed inappropriately on the freeway and, you know, I want to file a lawsuit and hail somebody to federal court. It's just a lot of new traffic that this and the other court systems in the union are not going to appreciate. I see that my time is running out here. I would just like to make one final comment in statutory standing. The EPA has rights that are under 7522 that are this big that allow them to enforce defeat parts and those sorts of things. The citizens' rights under section 7604 are much more narrowly defined and the Fleshman case, which we've, I think, appropriately briefed, outlined that case. If there's no other questions, Your Honors, then I'll yield my time. Thank you. We're ready to hear from the appellee. Good morning, Your Honors. Can you hear me? Yes. Thank you. My name is Reid Zars. May it please the court, I'm here representing the Utah Physicians for a Healthy Environment and with me is George Hayes, my co-counsel, and I'd like to reserve several minutes for his time to the extent there are questions of the has been plagued by air pollution for a number of years. There have been many efforts, including those of my client, to improve the air quality by enforcing or requiring no drive days to converting diesel buses to natural gas. In the light of all that, we have a group in that same airshed of men and companies making money, deliberately removing emission controls from diesel vehicles, installing defeat parts in diesel vehicles, selling parts to others, selling defeat parts of others so that they can put their parts in their vehicles, and driving these high-polluting vehicles in the airshed that's a very discreet airshed, as you may probably know, within the Salt Lake City area. Your Honors, Judge? Counsel, let me ask you real fast. Your opposing counsel says that your interpretation of the act is going to allow me to sue my neighbor for taking off his catalytic converter. Is that true? Under your theory, if I know my neighbor took off his catalytic converter to defeat the emission system, can I sue him under the Clean Air Act? As a theoretical matter, Your Honor, I believe yes. That would be a violation of the Clean Air Act to the extent you had standing, that is, you had your personal injuries associated with emissions coming off of a fully deleted vehicle, yes. Put me there in the Wasatch Valley. I'm a resident. I like to look at the mountains. I like to breathe clean air. The only thing I can point to is that my neighbor took off his catalytic converter, but I can't prove specifically that any asthma or ailments that I have directly relate to my neighbor's catalytic converter being off, but I know the general condition in the Wasatch Valley is contributing to it. Do I have a citizen suit there? Again, Your Honor, I believe in theory you do, as EPA would and as you've seen the state would, but the filing fee alone is $400 to bring one of these cases. If you look at the transaction costs to prosecute one of these cases, they're huge. So I would think Mr. Cannon's idea might be more practical, that is, you bring your tort case against them, but not one of these cases. These are heavy lifts that take quite a lot of time, and the reason we brought this one was the significance of the emissions from the public displays of them that were informing other people of how to do it. Understand, Your Honor, when we took one of these vehicles and had it tested, it showed that its emissions had increased 36 times what the emissions are of a stock vehicle, of a vehicle just coming out of the factory. All it takes then is a, these are super spreaders, and if you have just two to three percent of your fleet modified in this way, they are so disproportionately polluting that you double the emissions of the entire fleet. Okay, let me ask you this. So on your standing, you've alleged that the harms occurring in the Wasatch Valley, if you tried to expand that to a nationwide harm, do you still have standing, or have you not tried to make that case? We did not try to make that case, and I think if you were to make the case here, it is the impacts to a discrete, definable airshed. I'm sorry. So let me stop you there for a minute. So, I mean, is it a fair statement that to the extent there are vehicles where the pollution is occurring out of this airshed as a result of as far as harm? Not exactly. That is, and it's under Judge Shelby's ruling, he said we were unable to recall those parts or recall those vehicles as part of our injunctive relief, but because the conduct occurred in the Wasatch Front and in Utah, and that conduct either caused injuries or threatened to cause injuries to the Utah plaintiffs, they were still subject to penalty. So we were trying to stop the conduct, but we were, and Judge Shelby ruled, that we were unable to enjoin in a mandatory injunction of the vehicles or have them returned and fixed or destroyed. I'm sorry, Judge Hurts, go ahead. Go ahead, follow up. Well, I was going to say it just seems inconsistent. I mean, we're looking at what the harm is, I think, as opposed to what the act is, and the harm is undisputedly as to some of vehicles and parts occurring outside the airshed that's the subject of your case. Because if we expand it, then you have no case because you can't particularize your harm, so you have to keep it narrowed down into the valley there. But at the same time, you want to recover penalties for harms that are occurring elsewhere. And I just see an inconsistency. I'm wondering how we're supposed to get through that. Well, let's look at one example, which is the sale of the parts. They were selling parts to anyone who would buy them over the internet. Those parts are sold to people in Utah and outside of Utah. Those parts may be sold to someone in a neighboring or sister state in Wyoming that then drives that vehicle back to Utah. It's very difficult administratively to sort of divide up the conduct and say, well, some of this is prohibited if you sell within a zip code of Utah, but all of those outside of the zip codes in Utah, it's open season. So I think under the Constitution, to establish injury, one needs to show either a concrete injury or a concrete threatened injury. And it's the threatened injury that we believe is sufficient to at least support a penalization of those sales to then deter that practice that is, as a practical matter, again, very hard to just divide it up state by state or zip code by zip code. Well, you don't have standing just because you're offended by a violation of law. You agree with that, don't you? Yes, Your Honor. So the argument by opposing counsel that there needs to be a meaningful contribution, I'm not aware of support for that theory. I think if there's been some pollution in the Wasatch Front area and you live there, you have standing with respect to that injury. But if something is shipped to Montana, and so there's a threat of injury in the Wasatch Front, that seems a bit deluded to me. Do you have any case law regarding this type of threatened injury? Your theory would allow someone in Massachusetts to have brought this case, because there's a threat that these vehicles will be driven in Massachusetts and pollute there. Well, the... It's attenuated. Go ahead. No, fair enough, Your Honor. The violations at issue here all occurred in Utah. So we had standing... That's not the basis of your standing. It's not that there was a statutory violation. Everybody can be offended by that. People who watch the show could be very offended by that. You've got to show some harm or, as you say, threatened harm, which maybe that's the basis of your standing. But I'd like some help on that mobile sources that move around, obviously, and internet sales that can occur in and take place in one state and be transferred to another. But what we established was the violations and the conduct that was causing injuries within the state and that threatened to cause those injuries just by virtue of the fact that they're selling those parts in Utah and could be purchased by consumers in Utah. And if someone in Utah purchases it, then you have a claim. You have standing. You can distinguish between these cases. I mean, there's not a difficult factual issue of determining where the part was delivered for use, is there? It's not publicly available, Your Honor. But through discovery, you can, as we did in this case, find where the parts went to, how many they sold, and how many were illegal, like the EGR delete kits. So, yes, but it does sort of balkanize the practice or the state of the law where then you can move your operation to Wyoming and sell all the parts into Utah. It's problematic. Let me ask you about a couple other issues, if I may. One has to do with the lottery and whether that was a sale. And in Utah law, as I understand it, you look at the person who won to determine whether the ticket was purchased. Do we know, with respect to the people who got the trucks through the lottery, whether they bought anything from the defendants to get the ticket or whether they just requested a lottery ticket? Do we have that information in the record? I'm searching back. What I understand is that the people who bought equipment or parts or on the website, every $5, they got a chance to win. Then there were other individuals who could just send in a free postcard or a letter and get a chance to win. But I don't know. The percentage was obviously higher. They were making money on it. And so you had more sales than you had freebies. Can you break it down for the specific winners in this case? Do you know for each winner whether that person bought any tickets or made a purchase to get a ticket or got it without providing any consideration? Do you know that? I don't know that. I remember from the videos where they have testimonials from the winners and they say, I bought the t-shirt and look, I won this truck. But I don't know between them all which ones bought and which ones didn't, Your Honor. One other quick question. There were penalties imposed under both Utah statute and the federal statute. And you could read the federal statute as saying the fact that there were state penalties should be taken into consideration. Did the judge say anything about whether he was taking the Utah penalties into consideration when imposing the federal penalties? You're correct, Your Honor. He had an obligation to under the statute. And he looked at their ability to pay, the seriousness of the violation. And I don't specifically a distinction between the two types of violations, but that overall he weighed under this court's decision and pound the aerosol, the various factors that he was required to. But I don't remember him distinguishing between the two. Any other questions from the panel? Thank you, counsel. We've had your arguments, both of you. We appreciate it. Case is submitted.